UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Steven E. Goldsmith and
seqNET Technologies, Inc.

                                    Civil No. 10-cv-324-JL
        v.                          Opinion No. 2010 DNH 196

HSW Financial Recovery, Inc.

**MEMORANDUM OPINION**

The question in this case is whether defendant HSW Financial

Recovery, Inc. violated the Fair Debt Collection Practices Act,

15 U.S.C. §§ 1692 et seq. ("FDCPA"), or state tort law by

attempting to collect a debt from plaintiffs Steven Goldsmith and

his company seqNET Technologies, Inc. that, according to them,

had already been paid in full.  HSW has moved to dismiss the case

under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),

arguing that the FDCPA does not apply because the disputed debt

arises from a commercial transaction and that this court lacks

subject-matter jurisdiction over the remaining state-law claims

because, notwithstanding the parties' diversity of citizenship,

the plaintiffs have not plausibly alleged a sufficient amount in

controversy to satisfy 28 U.S.C. § 1332(a)(1).

The motion is granted in part and denied in part.[1]  HSW is

correct that the disputed debt arises from a commercial

transaction and that the FDCPA does not apply to such debts.  The

---

[1]The parties declined this court's offer to hold oral
argument, which is its ordinary practice for dispositive motions.

FDCPA claim is therefore dismissed.  Nevertheless, this court has diversity jurisdiction over the remaining state-law claims.  The plaintiffs have plausibly alleged that HSW, by reporting the disputed debt to a credit reporting agency, lowered Goldsmith's credit score and thereby caused his company segNET to incur extra financing costs well in excess of $75,000, which is the threshold for diversity jurisdiction.  HSW's other arguments for dismissal of those state-law claims have no merit.

## I.  **Applicable legal standard**

To survive a motion to dismiss under Rule 12(b)(6), the plaintiffs' complaint must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  In deciding such a motion, the court must accept as true all well-pleaded facts set forth in the complaint and must draw all reasonable inferences in the plaintiffs' favor.  See, e.g., Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48-49 (1st Cir. 2009).  The following background summary is consistent with that approach.

## II.  <u>Background</u>

In February 1999, segNET agreed to lease certain networking equipment from Direct Capital Corporation for a term of 36 months, with an advance payment of $1,813.42 and monthly payments of $819.21.  Direct Capital immediately assigned its interest in the lease to First Sierra Financial, Inc.  By the time the lease expired in February 2002, segNET had made all of the payments that it required, including any applicable late fees.  Neither Direct Capital nor Sierra Financial has communicated with segNET since that time, nor sued it for failing to make payment under the lease.

More than seven years after the lease expired, however, segNET's owner Goldsmith began receiving telephone calls at his residence from defendant HSW, a debt collector claiming that he and segNET still owed $3365.43 under the lease and threatening to report that unpaid debt to credit reporting agencies.  Goldsmith informed HSW that the lease had been paid in full and that any further communications should be directed to his attorney.  Nevertheless, HSW continued calling his residence, more than 95 times over the ensuing year.  Many of the calls were answered by his children or other third parties, who were told that Goldsmith was delinquent in paying a debt.

In July 2010, having collected no money from the plaintiffs, HSW reported to the credit reporting agency Experian that Goldsmith had an uncollected debt of $2580.  That negative report caused Goldsmith's otherwise strong credit score to drop 150 points.  As a result, Goldsmith received less favorable financing terms for his two children's private school education, which he anticipates will cost him an extra $30,000 per year for the next four years.  He also claims to have suffered severe personal trauma and hardship, including loss of sleep, depression, loss of productivity, loss of consortium, anxiety, and loss of reputation.

Goldsmith's credit problems also affected segNET, for which he sometimes serves as a financial guarantor.  In particular, segNET's key credit relationships were delayed for 60 days, forcing the company to purchase alternative "bridge" financing[2] at an extra cost of $650,000 and to forego certain capital-intensive projects that it anticipates would have earned about $30,000 per month for the next seven years.

Goldsmith and segNET sued HSW in this court in July 2010, asserting a federal claim for violations of the FDCPA and state-law claims for unfair or deceptive trade practices, defamation, and fraud.  They also sought declaratory and injunctive relief.

---

[2]Bridge financing is a "loan made to meet a customer's needs until it can raise additional permanent funds."  Charles J. Woelful, Encyclopedia of Banking and Finance 153 (10th ed. 1994).

HSW moved to dismiss the case, see Fed. R. Civ. P. 12(b)(1), (6), arguing that the FDCPA does not apply to the commercial debt at issue here and that, without that federal claim, this court has no subject-matter jurisdiction over the plaintiffs' remaining state-law claims. HSW also argued that the claims for defamation, fraud, and injunctive relief failed to state a cause of action.

The plaintiffs responded by amending their complaint, adding new allegations to support each of their claims (except the fraud claim, which they voluntarily withdrew, see document no. 28-1, at 3), and then objecting to the motion to dismiss. HSW recently notified the court that, notwithstanding the plaintiffs' new allegations, it still wants a ruling on its motion to dismiss. Both parties have submitted supplemental briefs on that motion, which largely reiterate the arguments made in their original briefing.

III. **Analysis**

A. *FDCPA claim* (count 2)

First, HSW argues that the plaintiffs' FDCPA claim must be dismissed because the disputed debt arises from a commercial transaction. This court agrees. The FDCPA is a federal statute "enacted to protect debtors from abusive debt collection practices." Chiang v. Verizon New Eng., Inc., 595 F.3d 26, 41

5

(1st Cir. 2010) (citing 15 U.S.C. § 1692(e)).  To qualify for
FDCPA protection, a debt must be incurred "primarily for
personal, family, or household purposes."  15 U.S.C. § 1692a(5).
It is well established that "actions arising out of commercial
debts are not covered by the protective provisions of the FDCPA."
Goldman v. Cohen, 445 F.3d 152, 154 n.1 (2d Cir. 2006) (citing
First Gibraltar Bank, FSB v. Smith, 62 F.3d 133, 135-36 (5th Cir.
1995)); see also, e.g., Pollice v. Nat'l Tax Funding, L.P., 225
F.3d 379, 400 n.23 (3d Cir. 2000); Bloom v. I.C. Sys., Inc., 972
F.2d 1067, 1069 (9th Cir. 1992).

     The plaintiffs argue that the disputed debt cannot be
considered commercial because no debt actually existed (having
been paid in full more than seven years earlier).  But the FDCPA
refers not only to actual debt obligations, but also to "alleged
obligations."  15 U.S.C. § 1692a(5) (emphasis added).  No one has
alleged that the plaintiffs incurred the disputed debt for
personal, family, or household purposes.  Rather, as the
complaint expressly acknowledges, HSW's allegation has always
been that they incurred the debt under a commercial lease.  Thus,
the FDCPA does not apply to this case.  See, e.g., Roberts v.
Cirone, No. 10-10732, 2010 WL 2573203, at *2 (D. Mass. June 23,
2010) (rejecting essentially the same argument).

**B.   *Subject-matter jurisdiction***

Without the FDCPA claim, HSW argues that this court lacks subject-matter jurisdiction over the remaining state-law claims because, notwithstanding the diversity of citizenship, the plaintiffs have not plausibly alleged a sufficient amount in controversy.  See 28 U.S.C. § 1332(a)(1)(requiring that "the matter in controversy exceeds the sum or value of $75,000" to establish diversity jurisdiction).  A case can be dismissed "for insufficiency of the amount in controversy only when, from the face of the pleadings, it is apparent, to a legal certainty, ... that the plaintiff never was entitled to recover a sum equal to, or in excess of, the jurisdictional minimum." Barrett v. Lombardi, 239 F.3d 23, 30 (1st Cir. 2001).  It is the plaintiff's burden to make a sufficient showing to avoid dismissal.  See, e.g., Amoche v. Guar. Trust Life Ins. Co., 556 F.3d 41, 49 n.3 (1st Cir. 2009).

Here, the plaintiffs have expressly alleged, both in their amended complaint and in Goldsmith's supporting affidavit, that they each incurred more than $75,000 in damages as a result of HSW's unlawful conduct.  See id. ("A party may meet [its jurisdictional] burden by amending the pleadings or by submitting affidavits.").  Goldsmith's damages allegedly consist of an anticipated $30,000 per year in extra financing costs for his children's education, plus his personal trauma and hardship.

SegNET's damages allegedly consist of $650,000 spent on bridge financing when its key credit relationships were delayed, plus an anticipated $30,000 per month in lost earnings from foregone, capital-intensive projects.

HSW argues that this court should disregard the plaintiffs' anticipated future damages because they are purely speculative (especially now that HSW has rescinded its negative report to the credit reporting agency).  But this court need not decide that issue.  Even setting aside those future damages, this court still has diversity jurisdiction over segNET's claims by virtue of the allegation that segNET spent $650,000 on bridge financing.  While that amount is much higher than the amount that HSW reported to the credit reporting agency ($2580), it is not implausible that more than $75,000 of the bridge financing costs were attributable to the credit problems caused by HSW.  Small changes in a company's financing terms, multiplied across a major transaction, can result in big changes to the total cost.

As to Goldsmith's claims, it is well established that where, as here, "the other elements of [diversity] jurisdiction are present and at least one named plaintiff in the action satisfies the amount in controversy requirement, [28 U.S.C.] § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount."  <u>Exxon</u>

8

<u>Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 549 (2005).
This court accordingly concludes that it has subject-matter
jurisdiction over both plaintiffs' state-law claims, all of which
clearly arise from the same case or controversy.

**C.   *Defamation claim*** (count 4)

Next, HSW seeks dismissal of the plaintiffs' defamation
claim.  "Typically, a plaintiff proves defamation by showing that
the defendant failed to exercise reasonable care in publishing a
false and defamatory statement of fact about the plaintiff to a
third party, assuming no valid privilege applies to the
communication."  <u>Thomas v. Tel. Publ'g Co.</u>, 155 N.H. 314, 321
(2007).[3]  HSW argues that the only defamatory publication that the
plaintiffs have alleged in this case is the filing of a negative
credit report, which should be deemed privileged, or otherwise
pre-empted, by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.
§§ 1681 <u>et</u> <u>seq.</u>, a federal statute that governs the credit
reporting industry.

The premise of HSW's argument, however, is incorrect.  The
filing of a credit report is not the only defamatory publication

---

[3]Both parties agree that New Hampshire law controls the
state-law claims in this case.  Finding no fault with that
position, this court applies New Hampshire law.  <u>See</u>, <u>e.g.</u>,
<u>Hodgkins v. New Eng. Tel. Co.</u>, 82 F.3d 1226, 1230 (1st Cir. 1996)
("where the parties agree what substantive law controls ... we
can--and ordinarily should--accept such a concession").

that the plaintiffs have alleged.  They have also alleged that
HSW placed telephone calls to Goldsmith's residence that were
answered by third parties, who were told of Goldsmith's alleged
delinquency in paying a debt.  HSW has not explained why those
allegations would not constitute publication for purposes of a
defamation claim.  See, e.g., Lyons v. Nat'l Car Rental Sys.,
Inc., 30 F.3d 240, 244 (1st Cir. 1994) ("It is enough that [the
defamatory statement] is communicated to a single individual
other than the one defamed.") (quoting Restatement (Second) Torts
§ 577, *cmt. b* (1977)).

A further problem with HSW's argument is that, even as to
the credit report, it construes the plaintiffs' claim too
narrowly.  HSW assumes that the plaintiffs view the credit report
as defamatory only because it was filed after the statute of
limitations had expired on the disputed debt (and hence HSW
argues that FCRA allows unpaid debts to be reported for up to
seven years, see 15 U.S.C. § 1681c(a)(4), notwithstanding any
state-law limitations period).  But the plaintiffs allege, more
fundamentally, that the credit report was false because the debt
had already been paid in full, and thus no longer existed at the
time of the report.

FCRA does state (albeit in a provision that HSW has not
cited) that "no consumer may bring any action or proceeding in
the nature of defamation ... with respect to the reporting of

10

information against ... any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to [FCRA] ... except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e).  Even if that provision applies here, however, the plaintiffs have plausibly alleged that HSW furnished a false credit report with malicious intent.  So their defamation claim cannot be dismissed on that basis.

**D.  *Permanent injunction claim*** (count 5)

Finally, HSW seeks dismissal of the plaintiffs' claim for a permanent injunction, arguing that the plaintiffs have an adequate remedy at law.  But that argument has been briefed in a rather perfunctory, conclusory manner and, in any event, is premature.  This court has already entered a stipulated preliminary injunction that prohibits HSW from attempting to collect the disputed debt from the plaintiffs, or reporting it to credit reporting agencies.  <u>See</u> document no. 18.  The plaintiffs have made a plausible claim that injunctive relief of that sort should be awarded on a permanent basis.  That claim cannot be resolved on the pleadings, without any evidentiary development.

**IV.  <u>Conclusion</u>**

For the reasons set forth above, the defendant's motion to

dismiss[4] is GRANTED as to the plaintiffs' FDCPA claim (count 2 of the amended complaint), but is otherwise DENIED.

**SO ORDERED.**

/s/Joseph N. Laplante
Joseph N. Laplante
United States District Judge

Dated:  November 12, 2010

cc:  Carolyn K. Cole, Esq.
     Daniel C. Proctor, Esq.

---

[4]Document no. 17.